UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATTHEW CHILDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21CV1283 HEA |
| | ) |
| PERFICIENT, INC., | ) |
| | ) |
| Defendant, | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment, [Doc. No. 36]. Plaintiff has filed his opposition to the Motion. Defendant has filed a reply. For the reasons set forth below, the Motion is granted.

**Relevant Facts and Background**

Perficient hired Plaintiff as an at-will employee when Plaintiff was 61 years old (November 2018). Plaintiff was promoted within the company from his initial position of Director of Customer Experience to the position of Director of Brand Experience when he was 62 years old (August 2019). Plaintiff was promoted a second and final time, to the position of Managing Director when he was 62 (January 2020). A few months later, when Plaintiff was 62 (April 2020), Defendant terminated Plaintiff's employment.

1

Plaintiff claims that Perficient had a culture of age discrimination. Plaintiff described the atmosphere at Perficient as a "covertly hostile environment for people that were older." Plaintiff claims that Grant Davies referred to Plaintiff as "old man" regularly during the last six months of Plaintiff's employment. During the first half of that time, Plaintiff reported to Davies. During the second half, Plaintiff reported to Ed Hoffman. Davies' recollection is that Plaintiff teased Davies about Davies' age first, because Davies was turning 50 years old in 2020, and that it was a joke between them from then on. Plaintiff does not believe he teased Davies first. The only written evidence found to date of either calling each other old was of Plaintiff calling Davies an "old-timer."

Plaintiff claims that Grant Davies told Plaintiff that Jim Hertzfeld, Chief Strategist, dyed Hertzfeld's hair because it was important for him to look younger. Davies recalls telling Plaintiff that he thought Hertzfeld dyed his hair but denies that he was telling Plaintiff to emphasize the importance of looking younger. Plaintiff testified that Hertzfeld is "very much a cultivator of the youth culture at Perficient." Hertzfeld testified under oath that he does not dye his hair and had not done so in the past five years.

Plaintiff claims that younger-looking employees were chosen to make pitches to certain companies to make Perficient look more hip. Plaintiff's coworker Stephen Griffin did not observe this to be the case.

2

Plaintiff claims that Ed Hoffman and Al Skelton, Operations Director, spoke frequently about the need for Perficient to have a more youthful staff, and he claims that Grant Davies echoed these sentiments. Plaintiff claims that Hoffman said that "You need more youth in the organization" and that Hoffman made Powledge a partner in the organization because she was younger and a better cultural fit.

The decision-maker as to both the last promotion Plaintiff received (to Managing Director) and the termination of Plaintiff's employment was Ed Hoffman. In an email sent on April 6, 2020, Hoffman documented that he believed Plaintiff was not working out in the Managing Director role for Experience Design. Hoffman detailed that he believed Plaintiff struggled to build relationships with key leadership; struggled to understand how to see his vision working within Perficient; struggled on the PR front; had a "selective memory" as to what he would promise to do; poor performance for pitches and estimates; failed to submit the comp workbook to ensure his supervisees were compensated fairly; failed to do one-on-one meetings with his colleagues; failed to provide direction for his team; and struggled to create his group's capabilities deck. Plaintiff disputes that these things occurred, and that Mr. Hoffman believed that they had occurred. Plaintiff claims that Hoffman told him that Plaintiff was not a good cultural fit for the position when he told Plaintiff that his employment was ending.

Hoffman promoted Linda Powledge to the Managing Director role on an interim basis. Plaintiff claims that Powledge was "significantly younger." Powledge was 52 at the time, which is about 10 years younger than Plaintiff. In his Complaint, Plaintiff does not claim that he was treated differently than any similarly situated employees. He claims he was treated differently from Stephen Griffin by Ed Hoffman with respect to delays in submitting the comp workbook, since both Griffin and Childs submitted their comp workbooks late, but Hoffman did not discipline or terminate Griffin for doing so.

Perficient has a non-discrimination policy and procedure for reporting discriminatory treatment. Despite this, Plaintiff failed to report any allegations of discrimination to Perficient. Plaintiff believes that the incidents described above occurred because of his age and sued Perficient under the belief that he has been discriminated against due to his age.

Plaintiff was born in May 1957, and he was 62 years old in April 2020, now 65. Grant Davies was born in January 1970, and he was 50 years old in April 2020, now 52. James "Jim" Hertzfeld was born in October 1968, and he was 51 years old in April 2020, now 54. Edward "Ed" Hoffman was born in December 1974, and he was 46 years old in April 2020, now 49. Linda Powledge was born in January 1968, and she was 52 years old in April 2020, now 55. Allen "Al" Skelton was born in August 1977, and he was 42 years old in April 2020, now 45.

Ed Hoffman makes it a practice as a manager at Perficient to counsel employees reporting to him if he observed that they were having problems with their performance. Hoffman testified at his deposition about the coaching he provided to Plaintiff. "[Plaintiff] had wonderful credentials on the creative side. He didn't seem to show the why Perficient component. Again, not something I documented. A conversation we constantly had on coaching him on being the center of those pitches.  "More than one occasion Matthew and I reviewed the Perficient sales [deck]. The message of why Perficient. The differentiators. We would discuss when strategy of how not to just pitch an idea but pitch an idea and then say here's why you want Perficient to deliver that idea. [Plaintiff] never grasp[ed] the idea of the product or the specific pitch for the customer. There is a subject matter expert, and then there's the representative of the organization. He struggled to go from subject matter expert to organizational representative. Hoffman thinks it is important to document when an employee reporting to him has an ongoing issue with their work performance. If an employee under his supervision has an ongoing, specific performance problem, Hoffman would document that performance problem. Hoffman testified that "I think it's important to document a performance issue that is ongoing and needs consistent follow-up or

5

followed through." Hoffman would typically document specific performance issues or areas of concern by e-mail or in conversation in weekly or biweekly meetings.

Hoffman sent e-mails to Childs regarding the compensation workbook, but also admitted to Stephen Griffin, who was promoted to Managing Director under Hoffman at the same time that Childs was promoted to Managing Director, that he "should have informed us more about the process [of doing the compensation workbooks], BUT that [in] the future we have to let him know if we have questions about something."

There is no document that explains to Managing Directors how they're supposed to do the compensation adjustments in the workbook. Hoffman coached the Managing Directors on compensation adjustments and emailed instructions to them. Managing Directors were supposed to learn how to do the compensation adjustments in the workbook through "coaching and training" from Hoffman. He also emailed instructions to them.

Griffin and Childs started in management positions on the same day, reporting to the same supervisor, Ed Hoffman. Griffin and Childs were also trained together. Griffin's error in submitting the comp workbook in a timely manner occurred in the same quarter that Childs' doing so occurred - the first quarter of

2020. According to Griffin, he and Childs had done "something similar, like we were both late."

According to Griffin, the way he had done the comp workbook process had caused a delay in compensation adjustments for his direct reports being made, and that was what had happened with Childs as well. According to Griffin, he and Childs were using the same system for compensation adjustments. Apparently, Hoffman was upset with Griffin for not completing the workbook, as Griffin texted Childs prior to Childs' termination to tell him that Hoffman had called him in the evening to talk about the workbook "like he just couldn't let it go." Hoffman admitted to Mr. Griffin that he should have "informed us more about the process" of doing the comp workbook. Hoffman did not give Griffin any kind of disciplinary notice for submitting his comp workbook late and did not put him on a performance improvement plan for being late with the comp workbook. Hoffman did not do so because of what Griffin (as opposed to Plaintiff) had done. Griffin apologized for the late submission and corrected the issue.  Plaintiff continued to tell Hoffman that he was correcting the problem but did not do so. Hoffman coached Griffin. Griffin could not remember if Hoffman mentioned anything negative about the delay in submission of the comp workbook on his 2020 performance review.

Hoffman testified that the Experience Design capabilities deck was not completed until the second quarter of 2020. Hoffman testified that the Experience Design capabilities deck was supposed to "create the vision" for the Experience Design business unit. Childs presented the capabilities deck during the first quarter town hall meeting. The capabilities deck is meant to be a "living document." Jim Hertzfeld worked on the capabilities deck with Childs and found that the process for doing so "was unremarkable . . . a routine series of drafts with comments" and that "it's a pretty common practice for us." He "Felt that there was a gap between those two [ – the needs that our clients would have that were being presented to our account teams, and then how we would utilize the XD practice to resolve those specific needs around design related to marketing . . . – ] the depth that [Plaintiff] had in one creative area of marketing and the design area of marketing. . ."

Plaintiff asserts two claims: age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code §§ 21.001, *et seq.*,. Defendant seeks summary judgment as to each claim. The Court addresses each claim and the parties' arguments in turn, below.

**Legal Standard**

**Summary Judgment**

8

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that]...raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th

9

Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

Further, Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or issue any other appropriate order." Rule 56(e)(3)-(4). For purposes of ruling on Defendant's motion for summary judgment, the Court need not consider any unsupported factual assertions contained in the argument section of Plaintiff's opposition brief for which Plaintiff failed to include, reference, and provide an appropriate citation to the record in responding to Defendant's statement of material facts or in his own statement of material facts. *See Johnson Trustee of Operating Eng'rs Local #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 523-24 & 524 n.1 (8th Cir. 2020) (holding district court did not abuse its discretion in considering plaintiffs' arguments only to the extent they cited to the summary judgment record with particularity).

## Discussion

Plaintiff alleges age discrimination under the ADEA and the TCHRA. He was in his early sixties when he was fired. To survive this motion for summary judgment, Plaintiff must present evidence that "creates a fact issue as to whether

10

the defendant's proffered reasons are pretextual" and raises "a reasonable inference that age was a determinative factor in the adverse employment decision." *Tusing v. Des Moines Independent Community School District*, 639 F.3d 507, 516 (8th Cir. 2011) (quotations omitted).

> "To establish a prima facie case of [age] discrimination under [the ADEA and Section 21], the plaintiff must establish that '[]he (1) was a member of the protected class [forty years of age or older], (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone [outside the protected class] or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.'" *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321–22 (5th Cir. 2021) (quoting *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020))."

*Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023). The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his age. 29 U.S.C. § 623(a). Persons aged forty and over are protected by the ADEA. 29 U.S.C. § 631(a). In order to establish a prima facie case under the ADEA, a plaintiff must show: (1) he is over forty; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) substantially younger, similarly situated employees were treated more favorably. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010).

Plaintiff may prove his claim of age discrimination through direct evidence or under the McDonnell Douglas burden-shifting framework. *Tusing v. Des*

11

*Moines Indep. Cmty. Sch. Dist*., 639 F.3d 507, 515 (8th Cir. 2011)." The Court applies the same analysis under the ADEA and the TCRHA, acknowledging that the ADEA requires that age be the but-for cause of the adverse employment action, whereas the TCHRA requires only that age be a motivating factor. *Smothers v. Rowley Masonic Assisted Living Cmty., LLC*, 63 F.4th 721, 727–28 (8th Cir. 2023)(addressing the ADEA and Iowa age discrimination statute).

Direct evidence of discrimination is that which shows a strong causal connection between the alleged discriminatory animus and the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc) (citing *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). "It must be 'sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.' *Id*. (quoting *Griffith*, 387 F.3d at 736 (internal quotation marks omitted)). Direct evidence can be circumstantial in nature, *id*., and "includes 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P*., 444 F.3d 961, 966 (8th Cir. 2006) (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). *Smothers*, 63 F.4th at 727–28.

Plaintiff has not presented any direct evidence of discrimination.

A plaintiff who presents no evidence of direct discrimination must satisfy the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 831 n.5 (8th Cir. 2020) (acknowledging Missouri courts' application of *McDonnell Douglas* in the context of the MHRA). The framework operates in three steps. The plaintiff must first prove a prima facie case of age discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The burden then shifts to the defendant, who must rebut by offering evidence of a legitimate, nondiscriminatory reason for the hiring decision. *Id.* The burden then returns to the plaintiff, who must show that the proffered reason is merely a pretext for intentional discrimination. *Id.* at 804, 93 S.Ct. 1817. However, because the plaintiff must eventually prove that he was the victim of intentional discrimination, "the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir. 2021) (cleaned up); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("It is not enough, in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (emphasis in original)).

*Bonomo v. Boeing Co.,* 63 F.4th 736, 742 (8th Cir. 2023).

The Court therefore analyzes this case under the *McDonnell Douglas* framework, In order to establish a prima facie case under the ADEA, a plaintiff must show: (1) he is over forty; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) substantially younger, similarly situated employees were treated more favorably. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010).

13

Plaintiff attempts to establish his prima facie case by arguing that he was replaced by Linda Powledge, who is at least 10 years younger than Plaintiff. Powledge is over forty and is therefore also in the protected age group as Plaintiff. Plaintiff was promoted to the Managing Director position over Powledge prior to Plaintiff's second promotion and subsequent termination.  At the time of the Managing Director promotion, both Plaintiff and Powledge were over 40 years old. By promoting Plaintiff over Powledge initially Plaintiff's claim that his employment was terminated because Defendant wanted to replace him with someone substantially younger is unreasonable. Were that the case, Powledge would have been selected rather than Plaintiff.

Likewise, Plaintiff's claim that he was treated differently than Stephen Griffin when both Plaintiff and Griffin failed to submit their comp workbooks on time. The evidence establishes that Plaintiff and Griffin are not similarly situated. While Griffin was remorseful for his errors and promptly acted to remedy the situation, Plaintiff continued to postpone submission and continued to misrepresent that he had done so. Furthermore, Griffin is also in the same protected age group as Plaintiff.

Even assuming Plaintiff could present a *prima facie* case of discrimination, Defendant has presented non-discriminatory reasons for firing Plaintiff. It was Hoffman's decision to terminate Plaintiff's employment.  Hoffman was also the

14

decision maker in Plaintiff's two promotions prior to his discharge. Hoffman terminated Plaintiff's employment because Plaintiff was not working out in the Managing Director role for Experience Design, He documented nine work performance problems for Plaintiff in the email sent a few days before the termination. Plaintiff was struggling to build relationships with key leadership; struggling to understand how to see his vision working within Perficient; struggling on the PR front; having a "selective memory" as to what he would promise to do; poor performance for pitches and estimates; failing to do one-on-one meetings with colleagues; failing to provide direction for his team; and struggling to create his group's capabilities deck.

     While Plaintiff disagrees with Hoffman's reasoning for his discharge, he only presents his self-serving opinion that his employment termination was because of his age. The undisputed facts, viewed in the light most favorable to Plaintiff and considered in their totality, prevent a reasonable factfinder from finding in Plaintiff's favor. . Plaintiff was twice promoted while he was in his sixties. The interim replacement, also a member of the protected class, was considered for the Managing Director position originally with Plaintiff, but Plaintiff was selected. The comparator Plaintiff presents was not similarly situated in all respects; Griffin responded quite differently when his performance was questioned; Plaintiff continued to misrepresent his compliance with what was

15

required of him. Defendant had an anti-discrimination policy. There is nothing in the record showing the policy was not followed. Indeed, the record is replete with evidence that Defendant promoted and employed Plaintiff rather than replacing him with persons outside of the protected group. Plaintiff's claim that Defendant had a culture of younger employees is nowhere to be found. The only evidence of comments regarding age and youth being said was from Plaintiff himself. The Court concludes Plaintiff has failed to rebut the non-age based, legitimate reason offered by Defendant for discharging Plaintiff. *See Bonomo*, 63 F.4th at 746.

## Conclusion

Based upon the foregoing analysis, there exists no genuine disputes of any material facts. Defendant is entitled to judgement as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 36], is granted.

A separate judgment is entered this same date.

Dated this 2nd day of August, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE